IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BURT ZWEIGENHAFT,

        Plaintiff,

v.

PHARMERICA CORPORATION and
PHARMACY CORPORATION OF
AMERICA,

        Defendants.

Civil Action No. 19-2201-RGA

<u>MEMORANDUM OPINION</u>

David M. Klauder, BIELLI & KLAUDER, LLC, Wilmington, DE; Thomas D. Bielli, Kathleen
J. Seligman, BIELLI & KLAUDER, LLC, Philadelphia, PA;

     Attorneys for Plaintiff

Brett D. Fallon, MORRIS JAMES LLP, Wilmington, DE; Christopher G. Kelly, Stosh Silivos,
HOLLAND & KNIGHT LLP, New York, NY; Jeremy M. Sternberg, HOLLAND & KNIGHT
LLP, Boston, MA;

     Attorneys for Defendants

September 3, 2020

/s/ Richard G. Andrews
**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint.  (D.I.

18).  The Court has considered the parties' briefing.  (D.I. 20, 25, 26).

## I.      BACKGROUND

Plaintiff filed the instant suit against Defendants Pharmacy Corporation of America

("PCA") and PharMerica Corporation on November 26, 2019.  (D.I. 1).  Defendants moved to

dismiss.  (D.I. 3).  Plaintiff then filed an amended complaint (D.I. 11), which alleges breach of

contract and the covenant of good faith and fair dealing related to PCA's purchase of OncoMed

Specialty LLC.  (*Id*. at 16-23).  Plaintiff seeks declaratory relief and damages.  (*Id.* at 23-25).

Defendants moved to dismiss Plaintiff's amended complaint.  (D.I. 18).

## II.     LEGAL STANDARD

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6), the Court must accept the complaint's factual allegations as true.  *See Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 555–56 (2007).  Rule 8(a) requires "a short and plain statement of the

claim showing that the pleader is entitled to relief."  *Id.* at 555.  The factual allegations do not

have to be detailed, but they must provide more than labels, conclusions, or a "formulaic

recitation" of the claim elements.  *Id.* ("Factual allegations must be enough to raise a right to

relief above the speculative level . . . on the assumption that all the allegations in the complaint

are true (even if doubtful in fact).").  Moreover, there must be sufficient factual matter to state a

facially plausible claim to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The facial

plausibility standard is satisfied when the complaint's factual content "allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* ("Where a

complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the

line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

"In deciding a motion to dismiss [a breach of contract claim], the trial court cannot choose between two differing reasonable interpretations of ambiguous provisions [of the contract]. Dismissal, pursuant to Rule 12(b)(6), is proper only if the defendants' interpretation is the only reasonable construction as a matter of law." *VLIW Technology, LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003). "When the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings, there is ambiguity." *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997). "Ambiguity does not exist where the court can determine the meaning of a contract 'without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends.'" *Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) (quoting *Holland v. Hannan*, 456 A.2d 807, 815 (D.C. App. 1983)).

## III.   DISCUSSION

Defendants move to dismiss on several grounds: (1) Plaintiff's amended complaint fails to state a claim against PharMerica as PharMerica was not a party to the contracts at issue; (2) Plaintiff does not have proper standing to assert the claims directly; and (3) Plaintiff released all claims at issue. (D.I. 20).

### A.   PharMerica

Defendants argue that, because PharMerica was not a party to the contracts at issue in the amended complaint, Plaintiff's claims against PharMerica should be dismissed. (D.I. 20 at 4-5). Plaintiff does not dispute that PharMerica was not a party to the Operating Agreement or the

Membership Interest Purchase Agreement ("MIPA").  (*See* D.I. 25 at 15-18).  Instead, Plaintiff

argues that "PharMerica can be held liable for its actions and that of its subsidiary or child-entity,

PCA, because PharMerica and PCA were alter egos of one another."  (*Id.* at 16).

      An alter ego analysis determines "whether the two entities operated as a single economic

entity such that it would be inequitable for this Court to uphold a legal distinction between

them."  *Harper v. Delaware Valley Broadcasters, Inc.*, 743 F. Supp. 1076, 1085 (D. Del. 1990)

(cleaned up).  "[A] Delaware alter ego claim has two elements: (1) have the two companies . . .

functioned as a single entity and thus should be treated as such, and (2) has this corporate

structure caused fraud, injustice, or unfairness?"  *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d

602, 619 (D. Del. 2018).

      Plaintiff points to paragraphs 123 and 124 of his amended complaint as support for this

alter ego claim.  (D.I. 25 at 17).  Those paragraphs allege that "both PCA and [PharMerica] acted

together and as one entity at all times relevant to the Amended Complaint" and "as such, PCA,

together with [PharMerica], are liable for breach of the Operating Agreement and MIPA."  (D.I.

11 at ¶ 123-24).  Plaintiff argues that the "facts averred in the Amended Complaint articulate the

unfairness of allowing PharMerica to escape from liability for its involvement in the Defendants'

fraudulent, improper and bad faith actions."  (D.I. 25 at 17).  Plaintiff, however, has not alleged

that the corporate structure of PCA and PharMerica acting as one entity "caused fraud, injustice,

or unfairness."  Nor could it.

      "[W]hile any party that brings a legal claim (e.g., for breach of contract, or in tort) against

a purported alter ego company can assert that an 'injustice' is being done to them (e.g., based on

the facts that give rise to their claim for breach of contract, or their tort claim), that is not the

kind of 'injustice' that is relevant."  *Harrison*, 320 F. Supp. 3d at 619.  "Instead, Delaware law

requires that the fraud or injustice be found in the defendant's use of the corporate form itself." *Id.* at 620 (emphasis omitted). Because Plaintiff does not allege that Defendants' "use of the corporate form itself" was the source of any injustice against him, Plaintiff does not adequately plead that PharMerica and PCA were alter egos of one another. Plaintiff therefore has not sufficiently claimed that PharMerica is liable for PCA's actions at issue here.

"It is a general principle of contract law that only a party to a contract may be sued for breach of that contract." *Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999). PharMerica is not a party to the contracts at issue in the instant case. Thus, I grant Defendants' motion to dismiss with respect to the claims against PharMerica.

### B.      Standing

Defendants argue that Plaintiff's claims should be dismissed because Plaintiff lacks standing to assert the claims directly. (D.I. 20 at 5). Defendants contend that the claims asserted in the amended complaint belong to the Sina Members instead of Plaintiff because "any harm that [Plaintiff] allegedly suffered was entirely contingent on harm suffered by the Sina Members." (*Id.*). The "Sina Members" are the holding companies Onco360 Holdings 1, Inc., Onco360 Holdings 2, Inc., and Onco360 Holdings 3, Inc., which are owned by Plaintiff and Kaveh Askari. (D.I. 11, Ex. 1 at 9). The Sina Members held the membership interests in OncoMed Specialty, which PCA contracted to buy in the MIPA and Operating Agreement. (D.I. 11, Ex. 2 at 2 of 136; D.I. 11, Ex. 1 at § 9.1(a) and (b)). Defendants argue that the duties in the Operating Agreement and MIPA that Plaintiff alleges were breached were owed to the Sina Members instead of Plaintiff. (*Id.* at 7).

4

Defendant PCA raised a similar argument on slightly different grounds in the related case, *Pharmacy Corporation of America/Askari Consolidated Litigation*, Civ. Act. No. 16-1123-RGA (D.Del.). (*See id.* D.I. 56 at 5). In that case, Defendant PCA argued that, because Mr. Askari was not a party or intended third-party beneficiary to the Operating Agreement upon which each of his asserted claims were predicated, his claims must fail. (*Id.*). I rejected this argument and determined that Mr. Askari did have standing to pursue his claims directly because he is a signatory to the MIPA, which the Operating Agreement incorporates by reference. (No. 16-1123-RGA D.I. 86 at 5-6). Plaintiff in the instant suit argues that because he, like Mr. Askari, was a signatory to the MIPA as a "Selling Shareholder," Plaintiff too therefore has standing to sue individually for breach of the Operating Agreement and MIPA. (D.I. 25 at 7; *see* D.I. 11 at ¶¶ 63-71).

Defendants contend that their argument in the instant case differs from the argument in the *Askari* case because Defendants now assert that Plaintiff's claims are derivative rather than direct. (D.I. 26 at 4). Defendants cite to Delaware law for the notion that to show that a claim is direct, a plaintiff "must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004).

*Tooley* establishes a two-pronged test for determining whether a claim is direct or derivative: (1) "[w]ho suffered the alleged harm—the corporation or the suing stockholder individually— and" (2) "who would receive the benefit of the recovery or other remedy?" *Id.* at 1035. The *Tooley* court explained that a "stockholder who is directly injured . . . does retain the right to bring an individual action for injuries affecting his or her legal rights as a stockholder. Such a claim is distinct from an injury caused to the corporation alone. In such individual suits,

the recovery or other relief flows directly to the stockholders, not to the corporation." *Id.* at 1036. The court in *Tooley* held that there was no basis for determining that the complaint at issue in the case stated a derivative claim because "[t]here [was] no derivative claim asserting injury to the corporate entity [and there was] no relief that would go the corporation." *Id.* at 1039.

The same is true in the instant case. Plaintiff does not allege any derivative claim that asserts injury to the Sina Members, and instead alleges that he suffered harm individually. (*See* D.I. 11 at 16-23). For example, Plaintiff alleges, "PCA engaged in a concerted course in conduct to lower the buyout price it was contractually obligated to pay to the Plaintiff (and Askari)." (*Id.* at ¶ 80). Similarly, Plaintiff alleges that "the real purpose of [the Working Capital Loan increases] was to ensure that the Plaintiff would not receive any value for his membership interests and render the contract illusory." (*Id.* at ¶ 93). Plaintiff also alleges that he has been harmed as "a direct and proximate cause of the Defendants' multiple intentional and material breaches of the Operating Agreement (and MIPA)." (*Id.* at ¶ 137). Further, any relief from the instant suit, such as a judgment declaring that Plaintiff still owns membership interests in Specialty or money damages to be determined at trial, would go to Plaintiff himself. (*See id.* at 23-24).

Accepting these allegations as true, that Plaintiff has adequately pled that he has standing to bring a claim to enforce the Operating Agreement. I therefore deny Defendants' motion with regard to standing.

### C.    Release

Defendants argue that Plaintiff has released any direct claims for the purported breaches

of contract and covenanted not to sue Defendants with respect to such claims.  (D.I. 20 at 8).

Defendants thus argue that Plaintiff's complaint should be dismissed.[1]  (*Id.*).

Defendants assert that a general release in the Separation of Employment Agreement and

General Release ("Separation Agreement"), which Plaintiff executed on June 16, 2015, applies

to the claims in Plaintiff's complaint.  (*Id.* at 8-11).  Defendants state that the "scope of a clear

and unambiguous release is determined by reference to the release's plain language."  (*Id.* at 9).

Defendants contend that the language of the release clearly releases Defendants from "'all causes

of action, suits, debts, claims and demands whatsoever in law or equity' that Zweigenhaft 'ever

had, now has, or hereafter may have . . . for any matter, cause or thing whatsoever,' from the

beginning of Zweigenhaft's employment with Specialty . . . until the date of the Release."  (*Id.* at

10) (citing D.I. 21-1 at 1(a)).  Defendants assert that Plaintiff's amended complaint is "predicated

on the terms of a contract that was executed during that period."  (*Id.*).

Defendants also point to the full title of the Separation Agreement—"Separation

Employment Agreement and General Release"—to argue that the release was to be construed

broadly.  (D.I. 26 at 6).  Defendants cite to Black's Law Dictionary (11th ed. 2019) in support of

this argument.  (*Id.*).  According to Defendants, the Dictionary defines "general release" as "a

broad release of claims that is not limited to a particular claim or set of claims . . . but instead

covers any actual or potential claim by the releasing party against the released party based on any

---

[1] Defendants assert that I can dismiss claims under Rule 12(b)(6) if the claims are released.  (D.I. 20 at 8).  Plaintiff does not contest that assertion.  (*See* D.I. 25 at 9-15).  Therefore, I need not, and do not, decide whether a Rule 12(b)(6) motion to dismiss is the proper vehicle for raising Defendants' release argument.

transaction or occurrence before the release." (*Id.*).  Thus, Defendants argue that the clear and

unambiguous language of the release in the Separation Agreement includes Plaintiff's claims in

its scope.  (*Id.* at 10).

I do not agree with Defendants that the language of the Separation Agreement clearly and

unambiguously includes Plaintiff's claims in the instant suit.  While the provision is broad, it is

not clear to me that it was intended to apply to claims unrelated to Plaintiff's employment.  Thus,

I do not think that Defendants' reading of the release is the only reasonable one.

Plaintiff offers an alternative reading of the release.  Plaintiff asserts that the "scope of

the [Separation] Agreement is expressly limited to [Plaintiff's] employment and does not release

the Defendants from any of the Plaintiff's claims set forth in the Amended Complaint."  (D.I. 25

at 9).  Plaintiff argues that, reading the Separation Agreement as a whole, the entire document

relates only to Plaintiff's employment.  (D.I. 25 at 10).  The Separation Agreement does not

mention the MIPA or the Operating Agreement or any of the other agreements or actions at issue

in the instant case.  The only contract referenced in the Separation Agreement is Plaintiff's

Employment Agreement.  (*Id.*).  Plaintiff avers that the release provision itself also only

contemplates employment-related claims and that Plaintiff's claims arose outside the timeframe

of the release.  (*Id.* at 10-11).

I therefore do not understand the language of the Separation Agreement to

unambiguously release Defendants from all claims asserted by Plaintiff's complaint.  Thus, I

deny Defendants' motion to dismiss with regard to the release.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (D.I. 18) is GRANTED-IN-

PART and DENIED-IN-PART.  An accompanying order will issue.